# EXHIBIT 2

*Yakima County Superior Court, Case No. 21-2-02047-39*
*(Case Information Sheet, Summons and Complaint)*

## Case Information

21-2-02047-39 | ELIJIO MENDOZA vs STATE OF WASHINGTON et al

| | | |
|---|---|---|
| Case Number | Court | |
| 21-2-02047-39 | Yakima | |
| File Date | Case Type | Case Status |
| 11/12/2021 | MSC2 Miscellaneous - Civil | Active |

## Party

**Plaintiff**
MENDOZA, ELIJIO

**Defendant**
STATE OF WASHINGTON

Active Attorneys ▼
Lead Attorney
Brooks, Jacob Earl
Retained

**Defendant**
JOHNSON, MICHELLE

**Defendant**
ACEVEDO-GONZALEZ, JOSE

Active Attorneys ▼
Lead Attorney
Brooks, Jacob Earl
Retained

Defendant
PEPPER, JASON

Defendant
MARTIN, BRENT

Defendant                                          Active Attorneys ▼
SMITH, CHRISTOPHER                                 Lead Attorney
                                                   TAYLOR, DEREK THOMAS
                                                   Retained

Defendant                                          Active Attorneys ▼
CAYS, KEVIN                                        Lead Attorney
                                                   Barry, John Wellington Tsuj
                                                   Retained

Defendant
SHAW, DREW

Defendant
PEPPERS, RYAN

### Events and Hearings

11/12/2021 Summons and Complaint

11/12/2021 Attachment ▼

| | |
|---|---|
| Comment | |
| INVESTIGATION REPORT | |

11/30/2021 Affidavit Declaration Certificate Confirmation of Service

11/30/2021 Affidavit Declaration Certificate Confirmation of Service

11/30/2021 Affidavit Declaration Certificate Confirmation of Service

11/30/2021 Affidavit Declaration Certificate Confirmation of Service

11/30/2021 Affidavit Declaration Certificate Confirmation of Service

12/01/2021 Affidavit Declaration Certificate Confirmation of Service

12/01/2021 Affidavit Declaration Certificate Confirmation of Service

12/08/2021 Notice of Appearance

12/10/2021 Notice of Appearance ▼

| | |
|---|---|
| Comment | |
| LIMITED | |

12/15/2021 Affidavit Declaration Certificate Confirmation of Service

12/15/2021 Notice of Appearance

12/15/2021 Demand for Jury 12 Person

FILED
TRACEY M. SLAGLE, CLERK

'21 NOV 12 P3:55

SUPERIOR COURT
YAKIMA CO WA

IN THE SUPERIOR COURT OF THE STATE OF WASHINGTON
IN AND FOR YAKIMA COUNY

| ELIJIO MENDOZA | NO. 21 2 02 04 7 39 |
| Plaintiff, | SUMMONS |
| Vs. | |
| STATE OF WASHINGTON | |
| MICHELLE JOHNSON, CCO | |
| JOSE "FREDDIE" ACEVEDO-GONZALEZ, CCO | |
| JASON PEPPER, YAKIMA COUNY SHERIFF DEPUTY | |
| BRENT MARTIN, CCO | |
| CHRISTOPHER SMITH, US MARSHALL | |
| DETECTIVE KEVIN CAYS, YPD | |
| DETECTIVE DREW SHAW, YPD | |
| DETECTIVE RYAN PEPPERS, YPD | |
| Defendants. | |

TO: THE DEFENDANTS ABOVE NAMED

A lawsuit has been started against you in the above-entitled court by the above name plaintiff. Plaintiff's claim is stated in the written complaint, a copy of which is served upon you with this summons.

In order to defend against this lawsuit, you must respond to the complaint by stating your defense in writing and serve a copy upon the undersigned plaintiff within twenty (20) days after the service of the summons (or within sixty (60) days after the service of this summons if served out of the State of Washington) excluding the day of service, or a default judgment may be entered against you without notice. A default judgment is one where plaintiff is entitled to what it asks for because you have not responded. If you serve a Notice of Appearance on the undersigned plaintiff, you are

Page 4

34  entitled to a notice before a default judgment may be entered.
35       You may demand that the plaintiff file this lawsuit with the court. If you do so, the
36  demand must be in writing and must be served upon the plaintiff. Within fourteen (14)
37  days after you serve the demand, the plaintive must file this lawsuit with the court, or the
38  service on you of the summons and complaint will be voided. If you wish to seek the
39  advice of an attorney in this matter, you should do so promptly so that your written
40  response, if any, may be served on time period we've done time.
41       This summons is issued pursuant to rule 4 of the Superior Court Civil Rules of
42  the State of Washington.
43       DATED this 12th day of November 2021.
44  *[signature]*
45
46

FILED
TRACEY M. SLAGLE, CLERK

'21 NOV 12 P3:55

SUPERIOR COURT
YAKIMA CO. WA

IN THE SUPERIOR COURT OF THE STATE OF WASHINGTON
IN AND FOR YAKIMA COUNY

| | |
|---|---|
| ELIJIO MENDOZA<br><br>Plaintiff,<br><br>Vs.<br><br>STATE OF WASHINGTON<br>MICHELLE JOHNSON, CCO<br>JOSE "FREDDIE" ACEVEDO-GONZALEZ, CCO<br>JASON PEPPER, YAKIMA COUNY SHERIFF DEPUTY<br>BRENT MARTIN, CCO<br>CHRISTOPHER SMITH, US MARSHALL<br>DETECTIVE KEVIN CAYS, YPD<br>DETECTIVE DREW SHAW, YPD<br>DETECTIVE RYAN PEPPERS, YPD<br><br>Defendants. | NO. 21 2 02 04 7 39<br><br>COMPLAINT |

    Comes now the Plaintiff, Elijio Mendoza, and for claim against the defendants Michelle Johnson, Jose 'Freddie" Acevedo-Gonzalez, Jason Pepper, Brent Martin, Christopher Smith, Kevin Cay's, Drew Shaw, and Ryan Pepper, alleges as follows:

    1. On November 14th, 2018, Michelle Johnson, Jose Freddie Acevedo-Gonzalez, Jason Pepper, Brent Martin, and Christopher Smith We're working as the violent offender task force, focus on another individual when they thought they spotted someone fitting Elijio Mendoza's description, so they decided to follow him. After approximately 30 minutes they were not able to get a positive ID on Mr. Mendoza and due to the concern of school busses now dropping off

35 children Michelle Johnson reports 'calling it off and calling it calling it in"
36 YPD then cleared them from the scene.
37     2.   All 5 members of the violent offender task force
38 continued to stay on scene after
39     3.   Michelle Johnson, Brent Martin and Jason Pepper (being the
40 driver) we're all in a white Dodge Durango while Christopher Smith (being
41 the driver) and Jose Freddie Acevedo Gonzalez we're in a dark Silverado.
42 Jason Pepper slammed into the front of Mr. Mendoza's Tahoe, while
43 Christopher Smith hit him from behind pinning him in **at this point**
44 **identification still had not been made.**
45     4.   All 5 law enforcement officers had weapons drawn on Mr.
46 Mendoza shouting out different commands for me to comply with.  The
47 violent offender task force did not have a tactical plan in place before the
48 take down. Positive identification was not made until Christopher Smith
49 broke the window and then identified Mr. Mendoza.
50     5.   Elijio Mendoza was wanted for a DOC warrant and a
51 misdemeanor warrant. Brent Martin reports Mendoza's hands going up-
52 and-down a few times and Michelle Johnson reports Mendoza's hands up
53 but says he was refusing to exit the vehicle. At no point while Mendoza's
54 hands were in the air did any of the officers try to remove him safely by
55 opening his door.
56     6.   Lethal force was used on Mr. Mendoza.
57     7.  Christopher Smith's recollection of events has changed multiple times
58 throughout his interviews. 1st stating that Mendoza was driving directly at him,
59 putting Smith in imminent danger.  In detective case narrative used for
60 Mendoza's detention during his preliminary hearing dated November 16th, 2018,
61 Smith reports a totally different account. Originally Smith reported he shot
62 Mendoza because Mendoza was coming directly at him, not because he thought
63 he had run over Pepper there is no mention of this. Smith leads us to believe it
64 was a cluster of shots after Mendoza hit the parked vehicle. This account differs
65 drastically from later testimony. If you refer to the Diagram and the direction of

66 Mendoza's car Smith would Have had to run pretty far and put himself directly in front of
67 Mendoza's car to be at risk. In that same narrative dated November 16th, 2018, it is
68 reported deputy pepper and DOC officer Martin both report the mobile home was hit
69 and Mendoza continued forward and at this point no shots have been fired yet
70 contradictory to Smith's later account and smith had moved behind pepper's vehicle
71 which would have put him out of harm's way refer to the map diagram note all bullet
72 casings were found in the area behind pepper's truck.
73    8. In detective Cay's narrative report Smith is also reported to have yelled "stop, stop,
74 stop" and then shooting but this is not consistent with the audio dispatch where you can clearly
75 hear shots fired and allegedly Mendoza yelling "stop, stop, stop" Smith admits remembering
76 Mendoza yelling stopped during this time period In detective Cay incident report dated
77 December 18th 2018 and Smith's interview dated November 19th 2018 line 522 - 523 and 857
78 - 858, smith remembers Mendoza is asking pleading with him to stop as he was being shot this
79 is consistent with the dispatch call where we can hear Mendoza yelling stop stop stop then
80 shots, in that same report smith remembers Mendoza having his hands in the air yelling no as
81 smith is tasing him. In Smith's interview dated November 19th, 2018, smith also States after
82 the shooting Mr. Mendoza asked him why he shot him.
83    9. In Smith interview dated November 19th, 2018, line 355 - 356, Smith stated
84 Mendoza's hands were extended on the steering wheel before he tasted him and whiled the
85 front passenger was exiting the vehicle, Smith perceived this as aggressive behavior and
86 deployed his taser.
87    10. It was troubling how many inconsistencies there were within the report of detective
88 Cay's, he immediately visited the scene and reports the evidence is consistent with Mendoza
89 driving straight at Smith, yet there are no bullet holes in the windshield, hood of the car or the
90 side of the car the bullets clearly entered through the driver's side window. Putting Smith to the
91 side out of harm's way while shooting.
92    11. Lethal force is only to be used when you are in imminent danger and there
93 are no other options. Smith remembers having enough time to strategically position
94 himself and aim this shouldn't himself and aim for Mr. Mendoza's chest line 507, 541,
95 54, 51, and 770-771., Smith specifically States he was ah little bit in front of the driver's
96 door line 773 - 776 when he shot. Detective Cays did not identify the extreme

97  differences in the accounts of events reported to him he then included the 2
98  separate accounts within his search warrant affidavit dated November 20th
99  2018 that search warrant was presented to the prosecutor's office and was
100 rejected but only due to not being enough evidence.
101     12.  When a person is taste it is normal behavior to tense up and lose
102 control of your body.
103     13.  I believe there to be conflict of interest with Ryan pepper being
104 allowed to do the majority of interviews and investigate a shooting (OIS) his
105 brother was involved in period at I've been. At times it appears the officers
106 being interviewed were uncomfortable saying anything that favored his brother
107 Jason pepper. I felt there would be extreme conflict of interest to have an
108 immediate family member be involved in the investigation. It is important to
109 understand when Smith shot and why, what was going through his mind as he
110 was making a split decision of this importance. There were extreme
111 inconsistencies when Smith shot and why. His 1st account was because
112 Mendoza was trying to run him over and the 2nd story explains 4 separate
113 times he shot and thought about it before he shot. The most troubling comment
114 made by Smith was in his interview with Kaye's online 766 through 767 When
115 Smith says "I immediately wanted, ah to use lethal force after driving over
116 pepper" It was then he took time to position himself and shoot. This statement is
117 more consistent with revenge.
118     14.  There is also a conflict of interest with Detective drew Shaw as he has
119 known Mendoza since childhood. They went to the same schools growing up.
120 Detective drew Shaw is well aware of who Mendoza is Outside of law enforcement
121     15. To my knowledge Christopher Smith was allowed to maintain his job under
122 normal capacity, that is very disheartening as his inconsistencies and lies of this
123 incident shows his moral judge of character and furthermore shows his credibility in
124 this case and others.
125     Wherefore the plaintiff praise for the relief as follows:
126 1. His lost wages to extend through his lifetime.
127 2. Pain and suffering

Page 9

128    3. Compensation from all medical bills
129    4. Compensation of time loss due to Wrongful incarceration
130    5. That The court awards such further and other relief as may be deemed just
131    equitable.
132    Dated this 12th day of November 2021

*[signature]*